UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-22479-COOKE/TORRES

RAMON GONZALEZ,

    Plaintiff,

v.

STATE OF FLORIDA DEPARTMENT
OF MANAGEMENT SERVICES,

    Defendant.
_____/

## OMNIBUS ORDER ON DEFENDANT'S MOTION TO STRIKE AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ramon Gonzalez ("Plaintiff" or "Mr. Gonzalez") brings this action against Defendant State of Florida Department of Management Services ("Defendant" or "DMS") to recover damages for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01.  Defendant filed a Motion for Summary Judgment (ECF No. 17) with supporting Statement of Undisputed Material Facts (ECF No. 16) to which Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 20) along with Plaintiff's Rule 56.1 Response with Incorporated Statement of Material Facts (ECF No. 21).  Defendant then filed its Reply in Support of Summary Judgment (ECF No. 25).  Defendant also filed a Motion to Strike Plaintiff's Notice of Filing (ECF No. 24), to which Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Strike (ECF No. 26) and Defendant filed a Reply in Support of Motion to Strike (ECF No. 27).  Therefore, Defendant's Motion for Summary Judgment and Defendant's Motion to Strike are fully briefed and ripe for adjudication.

I have reviewed Defendant's Motion for Summary Judgment, the Response and Reply thereto, Defendant's Statement of Undisputed Material Facts and attached exhibits, Plaintiff's Rule 56.1 Response with Incorporated Statement of Materials Facts and attached exhibits, Defendant's Motion to Strike Plaintiff's Notice of Filing, the Response and Reply

thereto, the record, and relevant legal authorities. For the reasons provided herein, Defendant's Motion to Strike Plaintiff's Notice of Filing is granted in part and denied in part and Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

The State of Florida Department of Management Services is comprised of several different divisions, including the Division of Real Estate Development and Maintenance ("the Division"), which is responsible in part for the maintenance of all buildings the State of Florida owns. Def.'s Stmnt. Material Facts ¶ 1; Pl.'s Stmnt. Material Facts ¶ 1. The Division's general duties include routine maintenance work, such as plumbing, air conditioning, structural integrity, and grounds maintenance, as well as maintaining public records and administrative security, and ensuring premises safety. *Id.* Daniel Eberhart ("Mr. Eberhart") is the Deputy Bureau Chief of Regional Facilities at the Division and has held this position since 1997. *Id.* at ¶ 2. He is responsible for overseeing all buildings from Jacksonville to Marathon, Florida, and all twelve facilities managers, as well as the senior refrigeration mechanic and his staff assistant, directly report to him. *Id.*

In late 2010, DMS hired Norberto Fernandez ("Mr. Fernandez") as the Facilities Manager. *Id.* at ¶ 3. Plaintiff was hired on November 29, 2010 as the Maintenance Supervisor for the Rohde Building in Miami, Florida. Mem. Dismissing Pl., ECF No. 18-4. Mr. Fernandez interviewed Plaintiff for the position of maintenance supervisor. Dep. Daniel Eberhart 35:15-21. Mr. Eberhart did not participate in Plaintiff's employment interview. *Id.* at 35:9-11. Mr. Fernandez directly supervised Plaintiff while Mr. Eberhart supervised Mr. Fernandez. Pl.'s Dep. 20:6-12. Both Mr. Fernandez and Plaintiff are Cuban males. Def.'s Stmnt. Material Facts ¶ 3 at n. 1; Pl.'s Stmnt. Material Facts ¶ 3. Mr. Eberhart did not know that Plaintiff was of Cuban nationality while Plaintiff was employed with Defendant. Dep. Daniel Eberhart 141:6-10.

As the Maintenance Supervisor for the Rohde Building, Plaintiff was responsible for a complex of two towers located in downtown Miami as well as for two additional buildings located in Opa-Locka and Doral. *Id.* at ¶ 3. Plaintiff was also responsible for managing a staff of seven employees, including three maintenance mechanics, two support technicians at the Rohde Building, as well as one maintenance mechanic at the Opa-Locka facility and one maintenance mechanic at the Doral facility. *Id.* Together with Mr. Fernandez, Plaintiff

2

was responsible for developing work plans for the mechanical staff, reviewing maintenance work performed at the three Miami-Dade DMS buildings, and contracting with outside vendors for work order services and supplies. *Id.* at ¶ 4. More specifically, as the Maintenance Supervisor, Plaintiff was responsible for prioritizing work orders based on level of urgency, materials available, the duration of the job, and the ability level of all available mechanics, as well as conducting daily inspections of operations systems, including elevators and air conditioning units. *Id.*

On January 2, 2013, Mr. Eberhart issued a memorandum outlining his concerns regarding Mr. Fernandez's work performance. Mem. Re: Performance Concerns, ECF No. 18-4. Mr. Eberhart noted that Mr. Fernandez needed to improve his communication skills by more consistently responding to tenant requests, timely responding to emails and phone messages, and maintaining more frequent communication with the regional office and Tallahassee headquarters. *Id.* The memorandum also recommended that Mr. Fernandez meet with staff more frequently to ensure that performance standards were met, proper maintenance schedules were maintained, and that required preventative maintenance records were maintained. *Id.* Mr. Fernandez was warned that "corrective action … [was] expected to begin immediately" as "further violations may result in more severe disciplinary action, up to and including dismissal." *Id.* Subsequently, on April 5, 2013, Tom Berger ("Mr. Berger"), Director of the Division, decided to terminate Mr. Fernandez. Def.'s Stmnt Material Facts ¶ 5; Pl.'s Stmnt. Material Facts ¶ 5. Mr. Berger cited Mr. Fernandez's poor supervisory performance as the reason for his termination, especially his hostile demeanor and insubordination towards his superiors, which created an intimidating and unprofessional work environment in the Rohde Building. *Id.*

As a result of Mr. Fernandez's termination, Mr. Eberhart assigned Plaintiff and Lissette Fernandez ("Ms. Fernandez"), Mr. Fernandez's administrative assistant, joint responsibility over the facilities. *Id.* at ¶ 6. Ms. Fernandez is a female from the Dominican Republic. *Id.* at n. 2. While Plaintiff was tasked with determining all requested maintenance projects and ensuring that the preventative maintenance programs were kept up to date, Mr. Eberhart requested that all work requests be routed through him for final approval. *Id.* at ¶ 6. Mr. Eberhart wanted to be the final decision-maker for all maintenance requests for budgeting purposes because he did not believe that Plaintiff had the necessary

familiarity with these issues since in the past he simply made all of his requests to Mr. Fernandez, who then took care of the details in his role of Facilities Manager. *Id.* Under this new arrangement, Ms. Fernandez oversaw all administrative functions while Plaintiff was responsible for supervising all maintenance tasks, an arrangement that Plaintiff believed improperly made Ms. Fernandez his superior even though she lacked the necessary knowledge regarding the maintenance and structure of the building. *Id.*

On April 20, 2013, Mr. Eberhart participated in a conference call with his supervisor, Bureau Chief Darren Fancher, the Division's human resources liaison, Kris Parks, and his assistant Belinda Huang. Dep. Daniel Eberhart 82:18-83:11. During this call, Mr. Eberhart discussed Plaintiff's poor attitude at work, his inability to communicate with staff, tenants, and vendors in a respectful and effective manner, as well as Plaintiff's issues with following department procedures. Def.'s Stmnt. Material Facts ¶ 7; Pl.'s Stmnt. Material Facts ¶ 7. More specifically, Mr. Eberhart shared that several DMS staff members complained that Plaintiff would berate and belittle them in front of building tenants, vendors, and members of the public, and that Plaintiff micromanaged them. *Id.* at ¶ 8. Additionally, Ms. Fernandez also received complaints from several employees, tenants, and vendors about Plaintiff's loud, aggressive, and intimidating manner. *Id.* at ¶ 9. Tenants reported back to her that Plaintiff had a bad attitude when responding to their maintenance calls and that he would complain about having to make the necessary repairs. *Id.* Plaintiff often failed to visit tenants with maintenance issues. Dep. Lissette Fernandez 32:5-33:13. When Ms. Fernandez confronted Plaintiff about his failure to respond to tenants' issues, he responded that he would tend to the tenants' concerns on his own schedule, not on theirs. *Id.*

In addition to tenant and vendor complaints about Plaintiff's attitude, Plaintiff also failed to adhere to Mr. Eberhart's request to rout all work requests through him. Def.'s Stmnt. Material Facts ¶ 10. Plaintiff instead authorized work without prior approval. *Id.* For example, Plaintiff authorized a vendor to perform maintenance work on a fence before a purchase order had been finalized. *Id.* Therefore, the work was performed before a verified method of payment was in place. *Id.* In another incident, a security company providing security at the Rohde Building damaged a light pole that required repair. *Id.* at ¶ 11. Mr. Eberhart determined that the security company should pay for the repairs directly, but Plaintiff, without any prior discussion with Mr. Eberhart, took it upon himself to pay for

4

the repairs using his purchase card. *Id.* DMS then had to pursue reimbursement from the security company, and, although the security company did reimburse DMS, those funds were placed back into the DMS general revenue fund instead of back into the Rohde Building budget, thus depriving the building budget of necessary funds. *Id.*

Mr. Berger ultimately "independently recommended the termination" of Plaintiff in a memorandum dated May 30, 2013 "based on the information provided to [him]." Aff. Thomas G. Berger ¶ 4. In recommending Plaintiff's termination, Mr. Berger cited to negative incidents involving Plaintiff and various employees, including Mr. Eberhart, custodial contractor supervisor Amanda Perez, mechanic Gus Gonzalez, DMS manager Ralph Reynolds, and senior refrigeration mechanic Joel Kyllonen. Mem. Dismissing Pl., ECF No. 18-4. Common to all incidents were comments regarding Plaintiff's tendency to scream, berate, and name call, as well as Plaintiff's failure to follow instructions and his dereliction of duties. *Id.* The information Mr. Berger relied upon in his report came from the human resources department, which in turn received its information from Mr. Eberhart. Dep. Daniel Eberhart 100:1-25. And, while Mr. Eberhart is uncertain as to whether Mr. Berger conducted an independent investigation of the complaints lodged against Plaintiff, Mr. Eberhart believes that he provided human resources with supporting documentation for each event described in Mr. Berger's memorandum. *Id.* at 101:1-13. Mr. Eberhart gathered information regarding various instances of complaints involving Plaintiff and submitted them to human resources for a review and feedback on how best to proceed. *Id.* at 107:5-24.

After Mr. Berger submitted his memorandum to human resources recommending that Plaintiff be terminated, human resources provided Plaintiff's termination notice for signature on June 4, 2013 to Bryan Bradner, the Deputy Director, who signed it. Letter Terminating Pl.'s Emp't, ECF No. 18-7. After human resources received Mr. Berger's memorandum recommending the termination of Plaintiff, human resources had the option of referring Plaintiff to counseling or issuing him an official warning or reprimand. Dep. Daniel Eberhart 103:25-104:15. Instead, after reviewing Mr. Berger's memorandum, the director of human resources decided that dismissal was warranted. *Id.*

DMS employees generally fall into two classifications: career service employees and selected exempt service employees. Def.'s Stmnt. Material Facts ¶ 14; Pl.'s Stmnt. Material Facts ¶ 14. Career service positions are unionized and comprise entry-level positions, such

5

as mechanics, custodians, and laborers. *Id.* Conversely, individuals in supervisory positions, such as the maintenance supervisor and facilities manager, are selected exempt service employees. *Id.* While career service employees cannot be terminated without cause pursuant to their collective bargaining agreement, selected exempt service employees are considered "at will" and therefore terminable at any time without cause. *Id.* Though he may not have been aware of his exact classification, Plaintiff was a selected exempt service employee, "at-will" and terminable at any time without cause. *Id.* Additionally, according to the DMS Administrative Policy concerning the Conduct of Employees and Disciplinary Guidelines, applicable to all DMS employees, while "[d]isciplinary actions generally apply to Career Service (CS) employees … DMS leadership *may* use disciplinary actions at their discretion concerning Selected Exempt Service (SES) … employees." Admin. Policy Concerning Emp. Conduct, ECF No. 22-3 at p. 39 (emphasis added).

Following Plaintiff's termination, Mr. Eberhart hired Ramona McConnel ("Ms. McConnel") as the new facilities manager and Richard Laird ("Mr. Laird"), a Caucasian male, as the new maintenance supervisor. *Id.* at ¶ 15. However, Mr. Berger decided to terminate Mr. Laird on August 7, 2014, shortly after his hire, following two investigations into incidents wherein it was alleged that he made discriminatory comments regarding Puerto Rican and Cuban employees, damaged DMS property and made sexually inappropriate gestures to subordinates, and sold scrap metal belonging to DMS without documenting the sales or forwarding the proceeds to the Bureau of Financial Management Services. *Id.* at ¶¶ 15, 16. Mr. Eberhart and his current supervisor, Bureau Chief Michael Jara, then made the decision to hire Alfredo Caravello ("Mr. Caravello"), a Cuban male, to replace Mr. Laird as the maintenance supervisor. *Id.* at ¶ 17. Mr. Eberhart acknowledged that Mr. Caravello has a "notable accent." Dep. Daniel Eberhart 142:20-21. Mr. Eberhart promoted Mr. Caravello to the position of facilities manager after Ms. McConnel resigned. Def.'s Stmnt. Material Facts ¶ 17; Pl.'s Stmnt. Material Facts ¶ 17. Before she resigned, Ms. McConnel hired two new mechanics, Juan Menendez and Wilmer Medina, both of whom are Latin. *Id.* While Mr. Eberhart did not participate in their interviews, he did not object to their retention. *Id.*

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Defendant on September 17, 2013, claiming that his termination was a result of

6

national origin discrimination. *Id.* at ¶ 18. In his discrimination charge, Plaintiff alleges that Mr. Eberhart fired him for being Cuban because he did not like the fact that Plaintiff spoke with a heavy accent. *Id.* While Plaintiff has no direct, independent knowledge of any comments made by Mr. Eberhart regarding his accent, he claims that Mr. Fernandez told him that Mr. Eberhart wanted to terminate Plaintiff since the beginning of his employment because Plaintiff spoke too loudly and with a heavy Cuban accent. Decl. Ramon Gonzalez ¶ 5. Mr. Eberhart concedes that he did have a conversation with Mr. Fernandez regarding Plaintiff, but that he did not focus "as much on his accent as … his volume." Dep. Daniel Eberhart 89:1-2. Mr. Eberhart conveyed to Mr. Fernandez that he had "a bit of concern that … maybe [Plaintiff's] rapid speech and loud demeanor would be of a concern in the general public in dealing with some of the agencies and directing the staff." *Id.* at 89:8-11. Mr. Eberhart denies ever telling Mr. Fernandez that Plaintiff's employment should be terminated because of his volume, accent, and rapid speech. *Id.* at 89:12-90:1. Plaintiff admits that he talks loudly, that he is a "strong, hard-voiced talking person," and that his co-workers may misinterpret his mannerisms because when he is upset he talks louder and faster. Dep. Pl. 52:7-19.

## II. LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Rule 56

7

"requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).  However, it is impermissible for the nonmoving party to attempt to create an issue of fact with a self-serving affidavit that contradicts the witnesses' prior testimony.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) ("Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."); *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).  When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### III.   DISCUSSION

#### A. Motion to Strike

Before addressing the parties' arguments on summary judgment, I will first address Defendant's Motion to Strike Plaintiff's Notice of Filing (ECF No. 24).  Defendant argues that the Declarations of Plaintiff Ramon Gonzalez and Norberto Fernandez, submitted in support of Plaintiff's Response to Defendant's Motion for Summary Judgment, should be stricken as: (1) violating Fed. R. Civ. P. 26(e); (2) containing legal conclusions, facts unsupported by the record evidence, and statements of subjective belief without personal

knowledge in violation of Fed. R. Civ. P. 56; and (3) attempting to introduce inadmissible evidence, including hearsay.

### 1. Violations of Fed. R. Civ. P. 26(e)

Fed. R. Civ. P. 26(e)(1)(A) provides in relevant part that "a party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…" Defendant contends that the Declaration of Norberto Fernandez must be stricken because while it is dated February 16, 2015, Plaintiff failed to disclose its very existence until Plaintiff filed it in support of his Response to Defendant's Motion for Summary Judgment.  More specifically, Defendant contends that it served Plaintiff with interrogatories and requests for production to which the Declaration of Norberto Fernandez was clearly responsive, and yet Plaintiff withheld his Declaration until the last possible moment, thus violating his continuing discovery obligations under Fed. R. Civ. P. 26(e). Therefore, Defendant seeks relief under Fed. R. Civ. P. 37, which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion…unless the failure was substantially justified or is harmless."

In response, Plaintiff argues that he withheld the Declaration of Norberto Fernandez because he considered it to be work product and because it does not fall within the purview of "documents" that must be disclosed pursuant to Fed. R. Civ. P. 26.  Additionally, Plaintiff argues that any failure to disclose the Declaration is substantially justified and harmless because Defendant knew from the content of both Plaintiff's Complaint and Witness List exactly who Norberto Fernandez was and the information that he conveyed to Plaintiff.  Therefore, Defendant could have deposed him.

I disagree with Plaintiff's reasoning that Norberto Fernandez's Declaration constitutes work product, exempt from production for discovery purposes, especially since Plaintiff has failed to cite to any binding precedent from the Eleventh Circuit on that point. Plaintiff relies on two decisions, one from the Northern District of California and the other from the Middle District of Pennsylvania, in support of his argument that the Declaration of Norberto Fernandez is work product and thus not subject to rules governing disclosure during discovery.  However, the factual situations in both cases differ significantly from the

9

factual situation present here. In the case before the Northern District of California, *Intel Corp. v. VIA Tech., Inc.*, 204 F.R.D. 450 (N.D. Cal. 2001), the defendant sought to use the declaration of a late-discovered former employee of plaintiff in support of its motion for summary judgment. In the case before the Middle District of Pennsylvania, *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647 (M.D. Pa. 2012), plaintiffs sought to use their own declarations in support of their opposition to summary judgment. The Court there acknowledged that the question of "whether a declaration … is appropriately deemed undiscoverable attorney work product is not altogether clear." *Bell*, 892 F. Supp. 2d at 660. However, it also found that while declarations generated by attorneys and signed by parties to the litigation generally would be regarded as work product, declarations of third-party witnesses would most likely not be regarded as work product. *Id.* at 661. Therefore, the factual situation in both *Intel Corp.* and *Bell* are clearly distinguishable from the situation at hand, since the Plaintiff here seeks to introduce the declaration of a third-party witness known to the Plaintiff from the very beginning of this case.

      I agree with Defendant that Plaintiff's failure to timely supplement its discovery responses to include the Declaration of Norberto Fernandez violates Plaintiff's obligations under Fed. R. Civ. P. 26 and was not substantially justified or harmless. Defendant relies upon the reasoning in *Edwards v. Nat'l Vision, Inc.*, 568 Fed. Appx. 854 (11th Cir. 2014), to support its argument in support of striking the Declaration of Norberto Fernandez, and I agree that it applies to the factual situation at hand. The Eleventh Circuit upheld a district court's decision to strike the declaration of a witness after the Plaintiff conceded that she did not timely produce the declaration and after finding that the declaration itself "was not harmless because it contained significant information that was relevant to whether [Defendant] discriminated and retaliated against [Plaintiff]." *Edwards*, 568 Fed. Appx. at 858. Similar to the factual situation in the district court order affirmed on appeal, Defendant here served Plaintiff with interrogatories and requests for production regarding the information contained in the Declaration of Norberto Fernandez. However, instead of providing Defendant with Mr. Fernandez's Declaration, Plaintiff held onto it in what appears to have been a tactical decision to ambush the Defendant in his response to Defendant's Motion for Summary Judgment. The Declaration is dated February 16, 2015, but Plaintiff failed to provide Defendant with a copy of it until April 27, 2015, well after

discovery had closed on April 3, 2015.

Plaintiff argues that its failure to provide Defendant with the Declaration is harmless because "[t]he vast majority of factual averments in the declaration[] concern well-known facts in this litigation, so much so that the anticipated testimony of Norberto Fernandez was even included in the Complaint." However, the district court in *Edwards* rejected those very arguments, reasoning that the defendant never deposed the witness, "as it might have done if it had timely been made aware of [the] declaration." *Edwards v. Nat'l Vision, Inc.*, 946 F. Supp. 2d 1153, 1159 (N.D. Ala. 2013), *aff'd*, 568 Fed. Appx. 854 (11th Cir. 2014). While the facts of this case are not as egregious as those outlined in *Edwards*, Plaintiff did deliberately withhold the Declaration of Norberto Fernandez in the same manner as the Plaintiff in *Edwards*, and his behavior cannot simply be excused as harmless. The Declaration of Norberto Fernandez serves as Plaintiff's sole evidence of discrimination, and Plaintiff's failure to timely disclose his declaration prejudiced Defendant's ability to depose or further explore his statements. Therefore, in line with the reasoning of *Edwards*, the Declaration of Norberto Fernandez is hereby stricken.

### 2. Legal Conclusions, Facts Unsupported by Record Evidence, and Statements of Contrary to Deposition Testimony

Defendant next moves to strike portions of Plaintiff's Declaration as containing inadmissible statements contrary to Plaintiff's deposition testimony. More specifically, Defendant contends that during Plaintiff's deposition, Plaintiff admitted that he lacked knowledge regarding the distinction between career service employees, who are subject to a formal grievance procedure under the terms of their collective bargaining agreement, and selected exempt service employees, such as Plaintiff and other supervisory level employees, who are considered at-will, terminable at any time. Defendant argues that Plaintiff's statements regarding disciplinary policies and procedures in his Declaration are contrary to his statements made during his deposition where Plaintiff admitted to having no knowledge of such policies and procedures.

However, I do not find Defendant's arguments to be convincing on this front. It could be that Plaintiff does not understand the distinction between career service employees and selected exempt service employees in that the former is governed by a collective bargaining agreement, while still understanding general disciplinary policies and

procedures. The two are not necessarily incongruous and do not indicate contradictory statements solely intended to create a question of fact on summary judgment. *See Van T. Junkins & Assoc. v. U.S. Indus. Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (a party "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion, that, by omission or addition, contradicts the affiant's previous deposition testimony"). Similarly, I find that Plaintiff's statements contain sufficient personal knowledge so as to not be considered subjective opinions for which Plaintiff lacks personal knowledge.

### 3. Inadmissible Hearsay

Finally, Defendant argues that Plaintiff's Declaration contains inadmissible hearsay statements. More specifically, Defendant argues that paragraphs 5, 10, and 11 in Plaintiff's Declaration contain inadmissible hearsay statements because they include statements Plaintiff heard from Norberto Fernandez, information Plaintiff gleaned after looking at documents produced in this case, and statements made by Mr. Eberhart in a conference call to which Plaintiff was not a party.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Unless a recognized exception applies, hearsay statements are inadmissible. Fed. R. Evid. 802. As a general rule, hearsay statements cannot be relied upon to defeat summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). A district court may consider a hearsay statement in evaluating a motion for summary judgment if the statement can be reduced to admissible format trial. When a hearsay statement is contained within another level of hearsay, both levels must meet some exception to the hearsay exclusion rule in order to be admissible. *See United States v. Pendas-Martinez*, 845 F.2d 938, 942-43 (11th Cir. 1988).

Defendant contends that Mr. Eberhart's statements to Mr. Fernandez regarding Plaintiff's accent, which were then conveyed by Mr. Fernandez to Plaintiff, are inadmissible hearsay. Although Mr. Eberhart's statements to Mr. Fernandez and Mr. Fernandez's subsequent statements to Plaintiff appear to fall within the definition of hearsay, both levels of statements falls within the hearsay exclusion for statements made "by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the

existence of the relationship," which are deemed admissions by a party opponent. Fed. R. Evid. 801(d)(2)(D); *see also Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997). Additionally, statements made by a supervisory official who plays some role in the decision making process are generally admissible. *See Zaben*, 129 F.3d at 1456. Mr. Eberhart and Mr. Fernandez were both employed by Defendant at the time Mr. Eberhart made the alleged statements to Mr. Fernandez. Mr. Fernandez then shared Mr. Eberhart's statements with Plaintiff sometime in February 2013, while Mr. Fernandez was still employed by Defendant as a facilities manager.

The statements made by Mr. Eberhart to Mr. Fernandez clearly fall within the hearsay exception articulated by Rule 801(d)(2)(D). However, Defendant argues that any statements by Mr. Fernandez to Plaintiff relaying Mr. Eberhart's statements cannot be admitted as exceptions to hearsay because Mr. Fernandez was not involved in the decision to terminate Plaintiff. In support of its argument, Defendant cites to *Zaben*, wherein the Eleventh Circuit upheld a district court's decision to exclude statements of two lower-level supervisors to the plaintiff. However, *Zaben* is clearly distinguishable from this case because in *Zaben*, the two lower-level supervisors were unable to specifically identify which senior managers made the allegedly discriminatory comments. Here, Plaintiff has clearly identified that Mr. Fernandez shared with him statements he heard Mr. Eberhart make, all during the course of his employment as a manager for Defendant. Therefore, the statements conveyed to Plaintiff by Mr. Fernandez via what he heard from Mr. Eberhart are admissible. *See Zaben*, 129 F.3d at 1457 ("If Carter and Dunning had been deposed—or had furnished sworn affidavits—and had testified with respect to age-biased statements made by *specifically identified*, senior managers at the plant, their statements … might have been relevant and, therefore, permissible.") (emphasis added).

Defendant also contends that Plaintiff's statements and conclusions regarding Mr. Eberhart's meeting with Darren Fincher and Kris Parks are hearsay as Plaintiff was not present for the conversation and merely relies on the documentary evidence to formulate his own conclusions. Defendant makes the same argument with regard to Plaintiff's statements regarding Mr. Eberhart's comments made during a conference call involving an evaluation of Plaintiff's attitude at work. As to Plaintiff's statements regarding the meeting between Mr. Eberhart, Darren Fincher, and Kris Parks, I do not find them to be inadmissible hearsay

13

because Plaintiff's statements are not offered to prove the truth of the matter asserted. Instead, Plaintiff uses the fact that a meeting occurred to explain that he never encountered Darren Fincher or Kris Parks and that he never dealt with Tom Berger in any capacity regarding his work performance. Therefore, Defendant's motion to strike paragraph 10 of Plaintiff's Declaration is denied.

However, I do find that paragraph 11 of Plaintiff's Declaration contains inadmissible hearsay. Here, Plaintiff relates what he knows about statements made by Mr. Eberhart during a conference call regarding Plaintiff's performance at work. However, Plaintiff was not privy to this call and only knows about what was said after reviewing the record evidence. Plaintiff then proceeds to declare all of the claims made by Mr. Eberhart to be untrue. Regardless of whether Plaintiff believes Mr. Eberhart's alleged statements to be true or false, his statement is a conclusion and an opinion drawn from his examination of the documents; it is not a statement of fact based on personal knowledge. *See Henry v. City of Tallahassee*, 216 F. Supp. 2d 1299, n. 13 (11th Cir. 2002). Plaintiff attempts to disprove the truth of the matter asserted in his inclusion of an out of court statement allegedly made by Mr. Eberhart. Therefore, paragraph 11 of Plaintiff's Declaration is stricken as inadmissible hearsay.

### B. Motion for Summary Judgment on Title VII & FCRA National Origin Discrimination[1] Claims

"Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 900 (11th Cir. 2006) (citing B*ass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001); 42 U.S.C. § 2000e-2(a)). "A prima facie case of national origin discrimination may be proved by direct or circumstantial evidence." *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1263 (M.D. Ala. 2011).

---

[1] Because the Florida Civil Rights Act of 1992 was modeled after Title VII, these claims will be analyzed under the same Title VII framework. *See Washington v. Sch. Bd. of Hillsborough Cnty.*, 731 F. Supp. 2d 1309, 1317 (M.D. Fla. 2010) (citing *Gamboa v. Am. Airlines*, 170 F. App'x 610, 612 (11th Cir. 2006) (claims under Title VII and the Florida Civil Rights Act are analyzed under the same framework)).

### 1. Direct Evidence

"Direct evidence of discrimination is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 1999)). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson*, 376 F.3d at 1086 (internal quotation marks omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.* Where a case of discrimination is proven by direct evidence, the burden shifts to the defendant to prove "by a preponderance of the evidence that the same decision would have been reached even absent the presence of the discriminatory motive." *Miles v. M.N.C. Corp.*, 750 F.2d 867, 875-76 (11th Cir. 1985).

As direct evidence, Plaintiff offers a comment made by Mr. Eberhart to Mr. Fernandez wherein Mr. Eberhart allegedly stated that he wanted Plaintiff terminated because he spoke too loudly and with a heavy Cuban accent. Plaintiff argues that this alleged comment by Mr. Eberhart to Mr. Fernandez while Mr. Fernandez was still an employee of Defendant constitutes direct evidence of national origin discrimination because it illustrates that Defendant never would have hired Plaintiff in the first place because of his accent and manner of speech; that Defendant was looking for a convenient way to terminate Plaintiff on the basis of his heavy accent.

Discrimination based on accent can be national origin discrimination. *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (supervisor's statement that Lebanese plaintiff was turned down for promotion because white coworkers were "not going to take orders from you, especially if you have an accent" was direct evidence of discrimination). However, an employee's heavy accent can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance. *See Yili Tseng v. Florida A&M Univ.*, 380 Fed. Appx. 908, 909 (11th Cir. 2010). As a maintenance supervisor, Plaintiff's job consisted of managing employees, communicating with outside vendors, and addressing tenant concerns. Therefore, effective communication skills were vital to his job as a supervisor. A review of the record evidence reveals that employees aside from Mr. Eberhart voiced concerns about Plaintiff's loud,

15

aggressive, and rapid speech. In fact, Plaintiff even acknowledges that he sometimes speaks too loudly, aggressively, and quickly. Therefore, Mr. Eberhart's alleged statements regarding Plaintiff's heavy Cuban accent, when viewed in the context presented by the record evidence as a whole, do not constitute "blatant" remarks "whose intent could mean nothing other than to discriminate on the basis of" Plaintiff's national origin. *Wilson*, 376 F.3d at 1086 (internal quotation marks omitted).

Plaintiff has failed to show that the statements allegedly made by Mr. Eberhart are direct evidence of discrimination. The Eleventh Circuit has made it clear that direct evidence is "evidence, which if believed, [proves] the existence of the fact in issue without inference or presumption. *Kilpatrick v. Tyson Foods, Inc.*, 268 Fed. Appx. 860, 862 (11th Cir. 2008). The comments cited by Plaintiff still require the Court to infer that the decision to terminate Plaintiff was motivated by Plaintiff's national origin. At most, the statement cited by Plaintiff establishes the undisputed fact that Mr. Eberhart was concerned about Plaintiff's communication skills. This is especially so given the gap in time between Mr. Eberhart's alleged comment and Plaintiff's termination. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002) ("To be direct evidence, the remark must indicate that the employment decision in question was motivated by race … the comment in this case was simply too far removed and too indirectly connected to the termination decision to constitute direct evidence of discrimination under the law of this circuit.").

### 2. Circumstantial Evidence

A plaintiff may establish a prima facie case of national origin discrimination under Title VII by circumstantial evidence under the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Absent direct evidence of discrimination, a plaintiff in a termination case can establish a prima facie case by showing that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position held; (4) and he was replaced or treated less favorably than someone similarly situated outside of his protected class." *Abbes*, 195 F. App'x at 900 (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)). If the plaintiff establishes a prima facie case of discrimination, a rebuttable presumption arises that the employer unlawfully discriminated against him and the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment decision. *See Smith*

16

*v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325-26 (11th Cir. 2011). If the employer meets this burden, the plaintiff must then present evidence tending to show that the proffered legitimate reason is a mere pretext for unlawful discrimination. *See id.* at 1326. A plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted).

  It is undisputed that Plaintiff has satisfied the first two prongs of the prima facie case. He is of Cuban descent and was terminated from his employment. However, the parties disagree over whether Plaintiff has met his burden on the third and fourth factors, namely, whether Plaintiff was qualified for the position held and whether he was replaced or treated less favorably than someone similarly situated outside his protected class. I will address the fourth factor first, as it will be dispositive of whether Plaintiff has established a prima facie case of discrimination.

  Plaintiff has failed to demonstrate, with competent evidence, that he was replaced or treated less favorably than someone similarly situated outside of his protected class. "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects ... it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Abbes*, 195 F. App'x at 900 (citing *Knight*, 330 F.3d at 1316). Defendant initially filled Plaintiff's position with Mr. Laird, a Caucasian male. However, simply presenting this evidence is not enough to conclusively establish that Plaintiff was replaced or treated less favorably than someone similarly situated outside of his protected class. The record evidence reveals that Mr. Laird was quickly terminated when an investigation into his employment revealed gross misconduct. Therefore, both Plaintiff, a Cuban male, and Mr. Laird, a Caucasian male, were terminated for similar reasons after investigations revealed misconduct and an inability to follow proper departmental procedures. After Mr. Laird was terminated, Mr. Eberhart interviewed and hired Mr. Caravello, a Cuban male with a "notable accent," to fill Plaintiff's former position. Mr. Eberhart eventually promoted Mr. Caravello to the position of facilities manager when that position became available. Therefore, Plaintiff has failed to cite to any evidence demonstrating that Plaintiff, a Cuban

male, was disciplined any differently from individuals outside his protected class employed as maintenance supervisors.

Plaintiff argues that even if he were unable to identify comparators outside of his protected class that were treated more favorably than him, he can still prove his prima facie case under the Eleventh Circuit's reasoning in *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989). He relies on language holding that:

> [I]n cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other person who engaged in similar misconduct.

*Jones*, 874 F.2d at 1540. However, Plaintiff's reliance on the reasoning in *Jones* to circumvent the prima facie elements of a discriminatory claim under Title VII is unavailing. First, *Jones* involves a case of racial bias, whereas here, Plaintiff alleges that he was terminated due to national origin discrimination. Additionally, while the plaintiff in *Jones* presented some record evidence to demonstrate that he was disciplined differently from his white counterparts, Plaintiff has failed to do the same here. Plaintiff here focuses on the fact that he was never given a verbal or written warning of any kind before being terminated, but fails to show that such a warning was mandatory or provided to employees in his position but outside of his protected class. In fact, the record evidence demonstrates that the Caucasian employee hired to replace Plaintiff was fired in the same manner as Plaintiff, without any warning or counseling. Therefore, without even addressing the third factor, it is clear that Plaintiff has failed to establish a prima facie case of national origin discrimination.

However, even assuming arguendo that Plaintiff had established a prima facie case of national origin discrimination, Defendant is still entitled to summary judgment because Plaintiff cannot rebut Defendant's legitimate, non-discriminatory purpose for terminating him. Defendant has introduced a great deal of record evidence demonstrating that Plaintiff

failed to perform his assigned duties, neglected tenant concerns, and ignored requests from his managers regarding budget issues. Additionally, Plaintiff has failed to demonstrate that Mr. Eberhart, the source of the alleged discriminatory comment, directly participated in Plaintiff's termination. The record evidence reveals that Mr. Eberhart gathered information from various other employees regarding Plaintiff's performance at work and then alerted human resources and upper management to those issues. The ball was then in their court, so to speak, in deciding how to discipline Plaintiff. Additionally, I find it especially compelling that the alleged discriminatory comment was made years before Plaintiff was actually terminated.

Therefore, despite Plaintiff's arguments that he was qualified for the job and that he consistently received great reviews from his prior supervisor, Mr. Fernandez, Plaintiff has failed to present any evidence to create a material dispute of fact that Defendant's reasons for terminating him were pretextual. More specifically, Plaintiff's arguments regarding his stellar reviews under the supervision of Mr. Fernandez and his sudden termination under the supervision of Mr. Eberhart do not conclusively establish that Defendant's stated reasons for terminating Plaintiff were pretextual because courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of a Title VII analysis. *See Jones*, 874 F.2d at 1541 (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1271 (6th Cir. 1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees").

As a selected exempt service employee, Defendant reserved the right to terminate Plaintiff at its discretion, which it exercised in this case. Plaintiff has failed to introduce any evidence that would suggest that Defendant's myriad reasons for terminating Plaintiff are a mere pretext. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*).

## IV. CONCLUSION

Having reviewed the arguments and the record, Plaintiff has failed to establish a prima facie case of national origin discrimination in violation of the Florida Civil Rights Act

of 1992 or Title VII of the Civil Rights Act of 1964. Therefore, as explained above, summary judgment in favor of Defendant is appropriate.

Accordingly, it is **ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (ECF No. 17) is **GRANTED**. Plaintiff's Complaint is **DISMISSED**. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE AND ORDERED** in chambers at Miami, Florida, this 25th day of August 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*